UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ANTICANCER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:11-CV-457 |
| | ) | (VARLAN/SHIRLEY) |
| BERTHOLD TECHNOLOGIES, U.S.A., LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This civil matter is before the Court on defendants' Motion for Summary Judgment of Noninfringement [Doc. 35], in which defendants move the Court to dismiss plaintiff's claims of patent infringement. Plaintiff submitted a response [Doc. 37], to which defendants submitted a reply [Doc. 38]. The Court has considered the pending motion, the responsive pleadings, and supporting exhibits in light of the relevant case law. For the reasons discussed herein, defendants' motion [Doc. 35] will be granted, plaintiff's claims against defendants will be dismissed, and this case will be closed.

## I. Facts

The dispute in this action arises from plaintiff's method patents in procedures which enable medical researchers to track the growth and spread of cancerous cells in animals by using tumor cells which contain fluorescent proteins [Doc. 1 ¶ 4]. The fluorescent proteins glow so that researchers may track the growth in real time using

fluorescence imaging, which allows researchers to learn what effect a given drug or treatment has on the examined tumor cells [*Id.* ¶ 6].

The first of the two patents at issue in this case pertaining to the use of fluorescent proteins is U.S. Patent No. 6,649,159 B2 (the '159 patent), which claims "methods for whole-body external optical imaging of gene expression and methods for evaluating a candidate protocol or drug for treating diseases or disorders using a fluorophore . . ." [Doc. 1-1, Ex. B at 2]. The '159 patent was issued on November 18, 2003.

The second patent at issue is U.S. Patent No. 6,759,038 B2 (the '038 patent). The '038 patent claims the procedure for following "the progression of metastasis of a primary tumor, which method comprises removing fresh organ tissues from a vertebrate subject which has been modified to contain tumor cells that express [fluorescence] and observing the excised tissues for the presence of fluorescence . . ." [Doc. 1-1, Ex. A at 2]. The '038 patent was issued on July 6, 2004 [*Id.*]. Plaintiff licenses the use of both patents to commercial users, including pharmaceutical companies, as well as non-commercial users, including educational institutions [Doc. 1 ¶ 18].

Defendants design, manufacture, and sell imaging systems for use by researchers and other medical scientists, including the NightOWL LB 981 NC 100 (the "NightOWL") and the NightOWL II LB 983 (the "NightOWL II") [*Id.* ¶ 20]. Both of these imaging systems, when used with the appropriate filter settings, are capable of utilizing the methods covered by the '159 and '038 patents in order to capture images of fluorescent protein [*Id.* ¶ 21]. In or around November 2002, defendants sold a

2

NightOWL system and various accessories for the device to Indiana University School of Medicine [Doc. 36-3 at 4]. The shipment included a filter for the use of fluorescent protein imaging [*Id.*]. Defendants later sold a NightOWL system to the Massachusetts Institute of Technology ("MIT") in August 2003, which also included filter accessories for the use of fluorescent protein imaging [*Id.* at 7]. In between the sale of the two systems, defendants published a marketing brochure in June 2003 entitled *Ultra Sensitive Whole Sample Imaging* [*:*] *NightOWL LB 981* (the "*Whole Sample Imaging* brochure"), which highlighted the capabilities of the NightOWL [Doc. 36 at 4].

In or around 2009 and again in or around 2010, researchers at the Koch Institute for Integrative Cancer Research at MIT used a NightOWL device to practice the methods claimed by the '038 patent without a license from plaintiff [Doc. 37-1 ¶ 6]. Plaintiff discovered the unlicensed uses based on at least two articles published by researchers at the Koch Institute, detailing the activities surrounding use of the NightOWL and plaintiff's patented methods [*Id.* (citing Hai Jiang, et al., The Combined Status of ATM and p53 Link Tumor Development with Therapeutic Response, 23 Genes and Develop. 1895 (June 2009) (the "Jiang article"); Kun Xie, et al., Error-prone Translesion Synthesis Mediates Acquired Chemoresistance, 107 Proceedings of the Nat'l Acads. of Sci. 20792 (Nov. 2010) (the "Xie article")]. Plaintiff also alleged that researchers at Indiana University similarly infringed the '038 patent using the NightOWL sold to them by defendants [Doc. 36 at 5].

3

Plaintiff filed suit against defendants in the Southern District of California on November 12, 2010, alleging direct infringement and indirect infringement of both the '159 and '038 patents, specifically alleging that defendants induced individuals at Indiana University and MIT to infringe plaintiff's patent using the NightOWL [Doc. 1 ¶¶ 41-43]. Upon defendants' motion, the case was transferred to this Court on September 19, 2011.

**II.    Standard of Review**

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002). "Once the moving party presents evidence sufficient to support a motion under Rule 56, the non-moving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp., Inc.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Catrett*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also

4

be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### III. Analysis

#### A. The '159 Patent

Plaintiff alleges that defendants directly infringed the '159 patent by discussing use of the NightOWL for monitoring gene expression and by using an image of a mouse imaged for "report gene expression" in the *Whole Sample Imaging* brochure [Doc. 37-3 at 23].[1] In support of their motion for summary judgment, defendants argue that plaintiff cannot show that defendants practiced all of the steps of the method claimed by the '159

---

[1] Although plaintiff alleges both direct and indirect infringement of the '159 patent against defendant in its complaint [Doc. 1], defendants note that in response to interrogatories plaintiff has clarified it is only pursuing an action for direct infringement of the '159 patent [Doc. 36 at 3 (citing Doc. 36-1 at 5)].

5

patent. Defendants further argue that the marketing brochure plaintiffs rely upon as evidence of infringement was released for public distribution prior to the issuance of the '159 patent. Defendants also contend that the marketing brochure was created in Germany, and that all activity described in the brochure also took place in Germany, so that no there can be no infringement.[2]

35 U.S.C. § 271(a) provides that:

> Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

Under section 271(a), "the concept of 'use' of a patented method or process is fundamentally different from the use of a patented system or device." *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1317 (Fed. Cir. 2005). "A method or process consists of one or more operative steps, and accordingly '[i]t is well established that a patent for a method or process is not infringed unless all steps or stages of the claimed process are utilized.'" *Id.* (quoting *Roberts Dairy Co. v. United States*, 530 F.2d 1342, 1354 (Ct. Cl. 1976)); *see also EMI Group N. Am., Inc. v. Intel. Corp.*, 157 F.3d 887, 896 (Fed. Cir. 1998) ("For infringement of a process invention, all of the steps of the process must be performed, either as claimed or by an equivalent step.").

In addition to the requirement that all steps to the method must be performed, all steps to the method must be performed when the patent is in force, *i.e.* after the patent has

---

[2]The Court notes that plaintiff did not offer argument regarding the '159 patent in its response brief [Doc. 37].

issued, for an act of infringement to occur. *See Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1360 (Fed. Cir. 2007) (noting that "infringement of a multi-step method claim cannot lie by the performance of a single step after issuance of the patent when the initial steps were performed prior to issuance"); *see, e.g. Mycogen Plant Sci. Co. v. Monsanto Co.*, 252 F.3d 1306, 1318 (Fed. Cir. 2001) (noting that § 271(g) of statute "requires that the patent be issued and in force at the time that the process is practiced and the product is made"), *vacated on other grounds*, 535 U.S. 1109 (2002).

Plaintiff's sole claim of patent infringement of the '159 patent stems from the *Whole Sample Imaging* brochure. That brochure discusses use of the Night OWL for the type of imaging gene expression claimed by the '159 patent [Doc. 36-2 at 9]. The brochure also displays images that depict gene expression in living mice [*Id.*]. Plaintiff alleges that defendants had to follow the methods covered by the '159 patent in order to produce the brochure.

In support of its motion, defendants submitted the affidavit of Bernd Hutter, an employee in defendants' Marketing & Product Management, Bioanalytical Instruments division [Doc. 36-2 ¶ 1]. Mr. Hutter testified that the *Whole Sample Imaging* brochure was released for public distribution on or about June 20, 2003 and that the all of the activity described in and connected to the brochure occurred prior to June 20, 2003 [*Id.* ¶¶ 3-4]. Mr. Hutter further stated that the date of the brochure can be observed by the "notation in the bottom right corner of the page" in vertical text which appears on the last

7

page of the brochure: 062003 [*Id.* ¶ 3].[3]  Plaintiff has not offered any evidence to rebut Mr. Hutter's testimony that the *Whole Sample Imaging* brochure was produced prior to the November 18, 2003 issuance of the '159 patent.  Plaintiff has not created a genuine issue of material fact as to whether defendants performed all of the steps under the '159 patent after the '159 patent had issued.  Accordingly, defendants are entitled to summary judgment on plaintiff's claim of patent infringement of the '159 patent.[4]

### B. The '038 Patent

In its response to defendants' motion [Doc. 37], plaintiff claims that researchers at the Koch Institute for Integrative Cancer Research at MIT practiced the methods of the '038 patent without a license and thereby committed patent infringement in 2009 and again in 2010 when they used the NightOWL to produce the Jiang and Xie articles. Plaintiff argues that defendants induced this direct infringement by producing a marketing brochure [Doc. 37-6, Ex. E] and PowerPoint presentation [Doc. 37-6, Ex. F], both of which give instructions on how to use a NightOWL II camera to conduct fluorescence imaging.  Plaintiff contends that defendants sent these documents to researchers at MIT in order to encourage or assist the researchers' infringement.  In support of this argument, plaintiff submits that "it is standard procedure for instrumentation manufacturers such as [defendants] to supply prospective and existing

---

[3]Later brochures produced by defendants similarly indicate the date of creation in vertical text on the last page [*See* Doc. 1-1 at 63, 73, 87].

[4]Because the Court finds that defendants did not engage in any potentially infringing activity after issuance of the '159 patent, the Court need not address defendants' other arguments.

8

customers with information about scientific applications for their products" [*Id.* at 8]. Defendants contend that plaintiff has produced no evidence that defendants sent the documents in question to MIT or any other institution, and as a result, has not presented a genuine issue of material fact as to whether defendants encouraged MIT researchers to infringe the '038 patent.

35 U.S.C. § 271(b) states: "[w]hoever actively induces infringement of a patent shall be liable as an infringer." The Supreme Court has held that induced infringement under § 271(b) "requires knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011). In light of the Supreme Court's ruling in *Global-Tech*, the Sixth Circuit set forth four requirements a plaintiff must satisfy to establish a claim for inducement infringement: (1) specific acts of direct infringement by a third-party; (2) the defendant took active steps that induced the third-party's infringement; (3) the defendant intended the third-party to take the infringing acts; and (4) the defendant knew or willfully disregarded the risk that those actions by the third-party would constitute direct infringement. *Static Control Components, Inc. v. Lexmark Int'l, Inc.* 697 F.3d 387, 415 (6th Cir. 2012); *see also Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1308 (Fed. Cir. 2012) (en banc) ("'[I]nducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.'") (quoting *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc)).

9

In this case, assuming *arguendo* that the MIT researchers infringed the '038 patent, plaintiff must also present evidence showing that defendants knowingly encouraged the researchers to infringe the '038 patent as required by the test set forth in *Static Control*. Defendants sold the NightOWL and shipped all accompanying instructions and applications to MIT in 2003, prior to the issuance of the '038 patent and prior to plaintiff informing defendants of the existence of the '038 patent in 2006 [Doc. 37 at 4]. Any of defendants' activities in regard to the sale of the NightOWL prior to 2006, then, cannot serve as evidence of inducing infringement because defendants did not know about the '038 patent. *See Static Control*, 697 F.3d at 415 (noting that plaintiff must show defendant knew or willfully disregarded the risk that others would infringe patent). The only two actions that plaintiff relies upon as proof of inducement by defendants are the publication of the brochure [Doc. 37-6, Ex. E] and the PowerPoint presentation [Doc. 37-6, Ex. F], both of which discuss the NightOWL II, a newer model of the device owned by MIT.

Plaintiff submits that "it is standard procedure for instrumentation manufacturers" such as defendants to send information to current and past customers about applications for their products [Doc. 37 at 8]. This general statement about the practices of instrumentation manufacturers cannot satisfy plaintiff's burden of creating a genuine issue of material fact as to whether these were actually sent by defendants to the MIT researchers who subsequently produced the Jiang and Xie articles. Conclusory allegations and unsubstantiated assertions are not evidence and are not adequate to

10

Case 3:11-cv-00457   Document 46   Filed 02/20/13   Page 10 of 12   PageID #: 795

oppose a motion for summary judgment. *Miller v. Aladdin-Temp-Rite, LLC*, 72 F. App'x 378, 380 (6th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)); *see also Roopchan v. ADT Sec. Sys., Inc.*, 781 F. Supp. 2d 636, 650 (E.D. Tenn. 2011) (noting conclusory allegations in plaintiff's response to motion for summary judgment did not raise a genuine issue for trial). Plaintiff has not presented evidence that defendants have a procedure whereby they periodically send out marketing materials to past customers or that defendants had a history of sending marketing materials to academic institutions such as MIT. Rather, plaintiff infers that because some manufacturers send such information, defendants sent the materials in question here and that information enabled the MIT researchers to infringe the patent. This assertion, without any other evidence that defendants sent MIT researchers the marketing materials intending that they be used to commit patent infringement, does not demonstrate the type of "specific facts showing a genuine issue for trial" necessary to defeat a well-supported motion for summary judgment under Rule 56. Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586.

Defendants have submitted evidence rebutting plaintiff's claim that the brochure and presentation were used to infringe the '038 patent in showing that there is no genuine dispute as to any material fact. In reply to plaintiff's response, defendants submitted an affidavit from Rhonda Mullins ("Mullins"), the president of defendant Berthold Technologies, U.S.A [Doc. 38]. Mullins testified that the PowerPoint presentation in question was created by defendant Berthold Technologies GMBH & Co., KG ("Berthold

11

Germany") and is used in employee sales training in Germany, noting that the presentation was not sent to MIT [*Id.* ¶ 2]. Mullins further testified that the brochure in question was also created by Berthold Germany for the NightOWL II and that the brochure was not provided to MIT [*Id.* ¶ 3].

As plaintiff has not presented evidence showing that MIT received the brochure or PowerPoint from defendants, and defendants have presented evidence that they did not send either of the materials to MIT, the Court concludes that there is no genuine issue of material fact as to whether defendants induced the MIT researchers to infringe the '038 patent. Accordingly, the Court will grant defendants' motion for summary judgment of non-infringement as to the '038 patent.[5]

## III. Conclusion

For the reasons stated, defendants' motion [Doc. 35] will be **GRANTED**, plaintiff's claims against defendants will be **DISMISSED**, and this case will be **CLOSED**.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE

---

[5] While plaintiff initially alleged that defendants also induced researchers at the University of Indiana to commit patent infringement, the Court notes that plaintiff does not address this claim in response to defendants' motion for summary judgment. Nonetheless, the Court applies the same analysis and reaches the same conclusion that there is no genuine issue of material fact for which a jury could rule in plaintiff's favor.